UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | Crim. No. 21-CR-571 (RC) |
| | : | |
| **v.** | : | |
| | : | |
| **CHRSTIAN MANDEVILLE** | : | |
| | : | |
| **Defendant.** | : | |

## GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits its Memorandum in Aid of Sentencing. For the reasons herein, the United States requests that the Court sentence the defendant to a period of 12 months of incarceration for Count 1; 6 months of incarceration on Count 2; and 180 days of incarceration on Count 3, all concurrent to one other, to be followed by one year of supervised release. The government is not requesting any fines in this case, other than required court costs. In support of this sentence, the government states the following.

## PROCEDURAL BACKGROUND

On March 30, 2021, the defendant was charged by complaint with two counts of Assault on a Foreign Official in violation of 18 U.S.C. § 112(a), Assaulting, Resisting, or Impeding Certain Officers in violation of 18 U.S.C. § 111(a)(1), and Unlawful Entry of Private Property in violation of 22 D.C. Code § 3302(a)(1). *See* ECF No. 1.

On September 10, 2021, an Information was filed charging the defendant with one count of Assaulting, Resisting, or Impeding Certain Officers in violation of 18 U.S.C. § 111(a)(1), one count of Intimidation of a Foreign Official in violation of 18 U.S.C. § 112(b), and one count Unlawful Entry on a Private Property in violation of 22 D.C. Code § 3302(a)(1). *See* ECF No. 25.

1

On September 22, 2021, the defendant pled guilty to all three counts of the three-count Information (ECF No. 25).

As a part of the Plea Agreement, the parties agreed that a sentence within the Estimated Guidelines Range outlined in the plea agreement would constitute a reasonable sentence. *See* ECF No. 29, at 4. Sentencing is scheduled for December 9, 2021.

## DISCUSSION AND RECOMMENDATION

### I.   Generally Applicable Legal Principles

When determining the appropriate sentence, the district court should consider all of the applicable factors set forth in 18 U.S.C. § 3553(a). *See United States v. Gall*, 128 S. Ct. 586, 596 (2007).  The listed factors in 18 U.S.C. § 3553(a) include the following:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed –
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for –
> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines –
> (i) issued by the Sentencing Commission ...; and
> (ii) that, . . . are in effect on the date the defendant is sentenced; ...

      (5) any pertinent policy statement –
          (A) issued by the Sentencing Commission ... and
          (B) that, . . . is in effect on the date the defendant is sentenced.

      (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

      (7) the need to provide restitution to any victims of the offense.

## II.    Defendant's Sentencing Guidelines Calculation

### A.    Total Offense Level

The government concurs with Probation's assessment of the applicable guidelines in the Presentence Investigation Report ("PSR"), which comports with the parties' estimated guidelines in the written plea agreement. *See* ECF No. 29, 33. As outlined in the PSR, the U.S. Sentencing Guidelines ("U.S.S.G.") apply only to Count 1 of the Information because pursuant to U.S.S.G. § 1B1.9, the guidelines do not apply to convictions for Class B or C misdemeanors, such as Count 2. PSR, at 6 ¶ 19-22.[1] Further, Count 3 (Unlawful Entry of Private Property) is an offense to which neither the U.S.S.G. nor the D.C. Voluntary Sentencing guidelines apply as Count 3 is a D.C. Code misdemeanor. PSR, at 7 ¶ 32-3. Accordingly, with respect to Count 1 of the Information, under the U.S.S.G., the base offense level for 18 U.S.C. § 111(a)(1) (Assaulting, Resisting, Impeding Certain Officers) is ten (10) (U.S.S.G. § 2A2.4(a)), with an additional three (3) levels because the offense involved physical contact (U.S.S.G. § 2A2.4(b)(1)(A)). PSR, at 6 ¶ 23-4. Therefore, the adjusted offense level is thirteen (13). PSR, at 7 ¶ 28. The government is recommending a two-level reduction for acceptance of responsibility, resulting in a total offense level of eleven (11) (U.S.S.G. § 3E1.1). PSR, at 7 ¶ 30-1.

---

[1] As part of the plea agreement, the parties agreed that the U.S.S.G. applied to only Count 1 of the Information. *See* ECF No. 29 at 3.

### B. Criminal History Category

According to the PSR and consistent with the Plea Agreement, the defendant has no prior convictions. PSR, at 7-8 ¶ 34-40. As such, this results in a total of 0 criminal history points and places the defendant in Criminal History Category I. PSR, at 7 ¶ 36.

### C. Sentencing Guideline Range

With a total offense level of 11 and a Criminal History that falls in Category I, the defendant's guidelines range is 8-14 months incarceration for Count 1; however, because Count 1 carries a statutory maximum term of imprisonment of 12 months, the applicable guidelines range for Count 1 is 8 to 12 months incarceration (U.S.S.G. § 5G1.1(c)). PSR, at 14 ¶ 74, 75.

On Count 2, the Court may impose any sentence authorized by statute, which here, carries a maximum term of imprisonment of six months. *See* PSR, at 14 ¶ 76, 73.

On Count 3, the Count can impose up to the maximum term of imprisonment of 180 days (22 D.C. Code § 3302(b)). *See* PSR, at 14 ¶ 77-78.

Additionally, the Court may impose a term of supervised release of not more than one year on Count 1 and 2 (18 U.S.C. § 3583(b)(3)). PSR, at 15 ¶ 81. Further, the defendant is eligible for up to five years of probation on Counts 1 and 2. PSR, at 16 ¶ 92.

## III. Sentencing Recommendation

The government is requesting a sentence of 12 months of incarceration for Count 1; 6 months of incarceration on Count 2; and 180 days of incarceration on Count 3, all concurrent to each other, to be followed by one year of supervised release.

### A. The Nature of the Offense

The defendant's conduct in this case posed a danger to the community and the victims. On March 29, 2021 at approximately 2:06 PM, U.S. Secret Service officers were dispatched to respond

to 2920 Cathedral Ave. NW, Washington, D.C. 20008, in response to a report of an unwanted person at the Swiss Ambassador's residence at that location. The residence of the Swiss Ambassador is adjacent to the Swiss Embassy. The complex is surrounded by fencing and has signs posted marking it as private property.

The Swiss Ambassador to the United States met law enforcement upon their arrival and stated that an individual, later identified by his Oregon identification card as Christian David Mandeville, refused to leave the premises. The Ambassador conveyed his concerns that the individual would get farther inside the embassy and that the individual would likely be alarmed once law enforcement entered. He then directed law enforcement to the front and side entrances of the residence. Officer Jacob Pina, a uniformed officer with the United States Secret Service, entered the residence with the Ambassador. Upon entering, Mandeville attempted to run farther into the building. The Ambassador put his hands out to stop Mandeville, but Mandeville used his arms to knock away the Ambassador's arms. Mandeville then used his body to try and push his way past the Ambassador. His actions pushed the Ambassador backward.

Officer Pina attempted to detain the subject and push him to the ground, but Mandeville continued to pull away and fight against Officer Pina. With additional law enforcement assistance, Officer Pina was able to take Mandeville to the ground. Mandeville refused to present his hands and pulled his hands inward, reaching towards the area of his waistband. Officer Pina sustained abrasions on his forearm from the altercation.

Review of camera footage and witness statements revealed that Mandeville initially rang at the gate, but was denied entry. A short time later, an embassy employee encountered Mandeville inside the residence. The employee was seen in video standing between Mandeville and the rest of the residence. As Mandeville approached the employee, the employee put out his arms and tried

to stop Mandeville. Mandeville then grabbed at his wrist to push the employee away. The employee then tried to grab Mandeville, but Mandeville continued to push the employee, attempting to get around him. The embassy employee later identified himself to law enforcement with Switzerland identification and was further identified by the Ambassador as one of his employees. Mandeville entered the residence of the Swiss Ambassador against the will of the lawful occupant or the person lawfully in charge thereof.[2]

This was a disturbing incident – the defendant crossed through fencing, forced his way past an embassy employee, and intruded into the Swiss Ambassador's private residence. Additionally, he did not leave the area when instructed to do so and went through several individuals, including the Ambassador, in his attempt to enter into the building. He was only stopped when officers were finally able to bring him to the ground, one of whom, Officer Pina, sustained bruises in the process. *See* photographs of Officer Pina attached as Exhibit B and C. Indeed, the defendant unlawfully entered the residence and assaulted a foreign diplomat serving his nation's interests within the United States. It is incumbent upon all persons to not assault, trespass, or engage in such disorderly conduct, especially when that person's position is intended to serve an important governmental function. The law appropriately protects diplomats in their missions and the defendant violated that covenant. Undoubtably, the defendant's behavior is concerning.

**B.    The History and Characteristics of the Defendant**

---

[2] The government further notes, as it did in its Memorandum in Support of Pretrial Detention (ECF No. 3), that the defendant initially came to the attention of the United States Secret Service ("USSS") on December 21, 2020, when USSS officers were dispatched to the residence of the Swiss Ambassador following reports of an individual, later identified as the defendant, who jumped the fence of the residence and stated that he wanted to talk to officials about his problems. Officers escorted the defendant off the property and issued a Barring Notice. Embassy personnel expressed that they did not want to press charges at that time and no charges were filed.

As set forth above, this conviction represents the defendant's first conviction. The government does not dispute that the defendant has faced many challenges during his life and that the defendant's mental health and housing issues at the time of this offense likely contributed to the chain of events that led up to the criminal conduct at issue. According to the defendant's attorney, the defendant had difficulty accepting his mental health diagnoses until April of 2021 – when he was on pretrial supervision in this case – which contributed to prior periods of unemployment, homelessness, and lack of contact with his family to include his time in Washington D.C. in the fall of 2020 and spring of 2021. *See* PSR, at 11-12 ¶ 56a. Recently, as noted in the PSR, the defendant has engaged in treatment for his mental health. *See* PSR, at 10-11 ¶ 54-56. However, it is concerning that even under pretrial supervision, the defendant has missed appointments, left his residence without authorization, and declined to take medication as prescribed. PSR, at 11 ¶ 56. Although the government is requesting incarceration as a result of the defendant's conduct in the instant case, it is the government's hope that he uses this time to continue to seek treatment and otherwise prepare himself to become a productive member of society upon his release from incarceration.

    **C.**    **The Impact of the Offense on the Complainants**

The government has inquired of the Swiss Ambassador, the Swiss Embassy, the United States Secret Service, and Officer Pina. It is the government's understanding that the complainants do not wish to submit victim impact statements or community impact statements to the Court. If that changes between the date of this filing and the date of the sentencing, the government will supplement this filing accordingly.

    **D.**    **The Need for the Sentence Imposed**

Given the defendant's history and the nature of the conduct in this case, the government

As set forth above, this conviction represents the defendant's first conviction. The government does not dispute that the defendant has faced many challenges during his life and that the defendant's mental health and housing issues at the time of this offense likely contributed to the chain of events that led up to the criminal conduct at issue. According to the defendant's attorney, the defendant had difficulty accepting his mental health diagnoses until April of 2021 – when he was on pretrial supervision in this case – which contributed to prior periods of unemployment, homelessness, and lack of contact with his family to include his time in Washington D.C. in the fall of 2020 and spring of 2021. *See* PSR, at 11-12 ¶ 56a. Recently, as noted in the PSR, the defendant has engaged in treatment for his mental health. *See* PSR, at 10-11 ¶ 54-56. However, it is concerning that even under pretrial supervision, the defendant has missed appointments, left his residence without authorization, and declined to take medication as prescribed. PSR, at 11 ¶ 56. Although the government is requesting incarceration as a result of the defendant's conduct in the instant case, it is the government's hope that he uses this time to continue to seek treatment and otherwise prepare himself to become a productive member of society upon his release from incarceration.

    **C.**    **The Impact of the Offense on the Complainants**

The government has inquired of the Swiss Ambassador, the Swiss Embassy, the United States Secret Service, and Officer Pina. It is the government's understanding that the complainants do not wish to submit victim impact statements or community impact statements to the Court. If that changes between the date of this filing and the date of the sentencing, the government will supplement this filing accordingly.

    **D.**    **The Need for the Sentence Imposed**

Given the defendant's history and the nature of the conduct in this case, the government

concurs with the recommendation of U.S. Probation and believes that a sentence of 12 months of incarceration for Count 1, 6 months of incarceration on Count 2, and 180 days of incarceration on Count 3, served concurrently, and to be followed by one year of supervised release is the appropriate sentence in this case. The government further requests that as special conditions of supervised release the Court impose the additional conditions outlined in paragraph 5 of the Plea Agreement. *See* ECF No. 29 at 4 ¶ 5(a)-(c). The government believes this sentence is just and sufficient to protect the public from further crimes by the defendant, provide the defendant any necessary rehabilitative treatment, and deter other similarly situated individuals from similar conduct.

This sentence is also fair in light of the fact that the defendant was originally, and appropriately, charged with felonious conduct. *See* ECF No. 1. Although the case has resolved via plea, the benefit is built into the bargain. But for the quick actions of law enforcement, the defendant could have further compromised the safety and security of the Swiss Ambassador, the embassy grounds, and personnel who live and work there.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:     /s/    TR
TARA RAVINDRA
Assistant United States Attorney
D.C. Bar No. 1030622
555 4th Street, N.W.
Washington, D.C. 20530
Office: (202) 252-7672
Tara.Ravindra@usdoj.gov